7953, 7957, Estate of Pearl B. Kalikow v. Commissioner of Internal Revenue, Mr. Flynn. Thank you, Your Honor. May it please the Court, my name is Kevin Flynn. I'm the attorney for the appellants in this appeal. The appellants are Edward M. Kalikow and Lori K. Platt, the limited administrators of the Estate of Pearl B. Kalikow. Mrs. Kalikow was the mother of the limited administrators who passed away on January 4th, 2006. Your Honors, the appellants maintain in this appeal that they should prevail because the tax court erred in ruling under Internal Revenue Code Sections 2044A and 2053B that the S.K. Trust was not entitled to a deduction or a reduction in liability. And just to be clear, these are alternative arguments, right? So if you have either – if either one of them prevails, you feel like you would account for the liability that you owe to the Estate? Correct, Your Honor. Either they are alternative arguments. As I was saying, the S.K. Trust was obligated under a settlement agreement to make a payment of $6.5 million. Could I ask you a question? Yes, sir. Is the Trust capable of making that payment? It was capable and it did make the payment, Your Honor, yes. It did make the payment? Yes. And so it made – so it's a given that at the time of the settlement, the Trust had paid $6.5 million in cash? The way it actually operated, Your Honor, at the time of the settlement, it had the cash to make the payment. Okay. But it wasn't required on that date to make the payment until there was some mechanics – Assets doesn't ask, you're saying? Yes. There was some mechanics involved where the surrogates court had to enter the settlement agreement, which took a period. It's funny. I didn't catch that from your brief. That's why I was asking. All right. So the settlement agreement says that the assets of the Article 3rd, 4th, and 5th Trust exclusive of KFLP are liquid assets that are sufficient to cover it. And so it doesn't – you don't explain what those assets are, but you're saying that the Trust had cash on hand? The Trust had cash on hand, yes. The settlement agreement was drafted as such that the limited administrators, my clients, were obligated to make a representation, which was true and accurate, that the Trust had cash and other liquid assets. So your position is that the value of the Trust has just literally been reduced by that amount of money because it has now been transferred to the estate? Very elementary, Your Honor, but that's it. On the date of Pearl's death – I was going to ask you, the date of valuation is her death? Yes. And so what you're saying is then that the Trust had within its financial – had available to it assets for distribution separate apart from the partnership control because the partnership is kind of frozen. Correct. It can't be used to pay the taxes. Well, not completely accurate, Your Honor, but keep in mind, Pearl passed away in 2006. The settlement agreement was signed in 2019. Between 2006 and 2019, obviously, well, the Trust generated revenue because what the Trust owned was an interest in KFLP, as you just referred to, that owned 10 apartment buildings in Queens and Brooklyn, Forest Hills, Briarwood, Flushing, mostly in Queens. That generated income. So the Trust, the S.K. Trust, was generating income between 2006 and 2019. But the important point is that the liability existed on the date of Pearl's death. So let's stop for a second now. On the date – but the question is what was the value of the Trust on the day of her death, right? Correct, Your Honor, yes. And did the Trust have $6 million on hand at that time? Oh, sure, Your Honor. Yes, it did. But the real question is did the Trust have a liability on the date of Pearl's death to the estate for $6.5 million? In other words, what the estate argument – Maybe this is an academic question because you're saying they didn't make the payment. But let's say they had the liability, but the only asset they had was the interest in the partnership, and so there was no expectation that they'd even make the payment. Would you still be able to detect the value of the liability from the value of the Trust? Yes, Your Honor. If the liability existed on the date of death, it affects valuation. And it did exist on the date of death. Except that if the Trust was unable to pay it, the beneficiaries of the Trust had guaranteed payment. Presumably, Your Honor, I think that is correct. What the limit administrators would have done, my clients, would have funded the settlement payment. They would have been obligated to fund the settlement payment because under the settlement agreement, these were good commercial lawyers. They really wrapped that up. They said the payment must be made and the Trust had to – But regardless, I suppose even if the way we value the Trust on that day is what, you know, the fair market value would have been if it were the subject of a sale of, you know, an arms-length transaction, anybody would have discounted the value of it by the liability they'd have to pay if they assumed control of it, right? Absolutely, Your Honor. It's a liability like any other liability that affects value. If you own a business and you go get a loan for a working capital, your business is then worth less. So I suppose did the tax court just miss this idea that the Trust had assets besides the partnership? The tax court missed something else, Your Honor. The tax court missed my argument. My argument was that you had to reduce the value of the Trust by the liability, either under 2044, which is a reduction in value, or under 2053, which is a deduction, a separate issue. The tax court framed the issue and framed its analysis as if we were arguing that the value of KFLP, which Your Honor mentioned, had to be reduced. Completely missed the issue. We were not arguing that the value of KFLP had to be reduced. Indeed, the lawyer for the IRS and I stipulated to – See, that's – with all due respect, the problem that I get is from the brief. I didn't get the sense from you, from your brief, that the value of the Trust was the value of KLRP plus X amount of dollars. There's nowhere in your brief or discussion that the Trust was worth far more – the value of the Trust was far more than $54 million because while the real estate, the limited partnership that controlled the real estate was 54 million plus or minus the 1.5%. Yes. And then there's a mention of cash on hand of another $835,000, but there's no mention. That's why the first thing I asked you was, where's the cash? Where's the $6 million coming from? And you're telling me there was considerable sums of cash on hand that would obviously say, let's do the math together, you and I, okay? $54 million and say they had $16 million on cash on hand. Then the value of the Trust at that point in time would be $70 million, right? Correct, Your Honor, but if I may – And then your argument – I presume your argument that I get you're making today. Now, I'm not trying to put words in your mouth. I'm not trying to trick you. I'm just trying to figure this out. Yes. All right? Okay. We don't get to pick what comes to us, and so I'm just trying to figure this out. And so your argument today is, is that, okay, it's 54 plus, using my hypothetical, 16 minus 6. Is that it? Correct, Your Honor, but what you're focusing on are assets, which I understand. There are assets – So that's how you – is that how you evaluate a state? No. You also look at the liabilities, Your Honor. That's my point. Well, that's – you start with the assets, and then you work – But that's my point, is that whether the – it's not – I don't believe, Your Honor, in all respect, that the analysis is what were the assets, how much were they worth. Okay. It's partly that, but you have to look at what is the liability, because when you – Just to clarify, you're saying, even if you didn't have cash on hand to pay the liability, it still should have been counted against the value of the trust, but you're also saying, in point of fact, you did have the assets to cover the liability. Absolutely, Your Honor. And maybe it's not explicitly in the record, but we have in the record that 15 years ago, there was $800,000 in cash, and maybe that appreciated. And we have the settlement agreement, which represents that they have liquid assets to cover the settlement agreement. Correct. The settlement agreement says they have ample liquid assets. The total settlement agreement was $9.2 million. We're talking about 6.5. The settlement agreement provided that there was ample assets to pay the liability. But once again, to go back to the question, it really is not just looking at assets. I get that that's your position. Okay. We'll hear from you again on rebuttal, but let's turn to the appellee, Ms. Avetta. Thank you, Your Honors, and may it please the Court. Julie Avetta for the Commissioner. The fair market value of trust property is the value of the trust that is includable on an estate tax return, not the microbalance sheet of the trust as some sort of going concern. So to be clear, the assets of the trust on the date of death were two things. They were a partnership interest that was stipulated at $54.49 million in value, and there were liquid assets in the amount of $835,000. That the trust was later able to make a settlement payment out of income produced by those trust properties over the course of the surrogates' court proceedings, which took many years, is not material to the valuation of either of those assets on the date. So if we're imagining a fair market transaction where somebody purchases the trust and they know if I purchase the trust, I'm going to have this liability for this amount of money, why wouldn't I discount the value by that amount? Because they cannot purchase the trust, Your Honor, because the trust is not a separate asset. The trust is a legal means. It doesn't matter. I mean, it has to be valued for the purpose of the tax return, right? Like, they are liable for their own portion of the estate taxes and so on, so there is going to be listed on the return an estimate of the value of the trust, isn't there? Of the trust assets, Your Honor, and the assets only. The liabilities of the trust are not material to the estate except either as they affect the fair market value of trust assets, if they travel in rem, if, for example, there is a property that's — If they're uncovered by a mortgage. Precisely, or financing agreement, or, you know, like there's contaminated property or something that a willing buyer would receive as a part of acquiring that property at fair market value. Why does — go ahead and finish your thought, and then I'll ask you. And the estate tax return itself you can think of as sort of a balance sheet. So if there are trust expenses that are attributable to administration of the estate, those would be deductible. So only in those cases does the activity of the trust affect the value of the estate. And here you've got two assets. But isn't this an expense related to the administration of the estate because it's a closeout expense in order to allow for the transfer? Not the payment of income. The — some of the expenses that are included within that 9-point million were deductible expenses of the estate, and the Commissioner did agree to that. But the payment of income, it helps to think of it this way. The partnership interest was the golden goose, and it laid a golden egg every day. And the egg was income to be paid to Pearl during her lifetime. The $6.57 million was the restoration of eggs to where they should have been in the first place. It did not affect the value of the goose. The trust is not the goose. The partnership is the goose. And the other — Well, if you buy the goose with the expectation that you're going to get a certain number of eggs, but it turns out that it owes a bunch of eggs to someone with a preexisting claim, wouldn't that affect the value of the goose in a fair market transaction? Only if the partnership actually owed that liability. But the liability did not attach to the partnership, and the tax court so helped. The partnership was free of liability. A willing buyer could come in, pay fair market value for the partnership, and walk away with all of those buildings with no continuing obligation because the obligation is — And that's the curious thing about the settlement. The settlement exempts — Precisely. — the limited partnership from any — I mean, this is a very carefully — we're in agreement. And I — with all — you know, so the son and the daughter, in settling the fact that they had somehow not allowed Bob to have $6 million during the last few years of her life, then enter into an agreement that says that none of the partnership, the $54 million worth of commercial — of residential multiple-use or multiple-vacant or occupancy housing that dad had bought can't be used, can't be used to settle any of the tax liability. It can't be sold. And so therefore they've insulated the asset. And then said, oh, but it's encumbered by $6 million. But it's not encumbered at all. It is not encumbered at all. Because it's not in any way liable. That's correct. And the settlement agreement recognizes that. That is correct. And then depends upon their personal guarantees. And they are trustees. $86 million. Correct. Now — Right? Now let me ask you a question. At the time of the father's — at the time of the mother's death — I just don't remember the names, so I'm not going to bother with the names. I believe Pearl was the mother. So I'm not going to be overly difficult. But at the time of the mother's death, that's when we value the trust, right? That's when we value the assets in the trust. We value the estate on the date of death. Yes. Right. The trust property that is includable in the estate. In Section 2044 of the Internal Revenue Code — And is there any dispute that the value of the real estate partnership at that time was 58.4 or whatever it was? 54.4. There is no dispute. It was stipulated. That is correct. So you stipulated to the value of the buildings. Yes. Then you told us when you first started talking, when you first started arguing, you said that in addition to that there was $835,000 in the account. Is that the amount of money that was in the trust accounts, bank accounts, on the date of death? To the best of our knowledge, yes. But we do not believe that that was income from the trust. We believe that those were assets. Rather, that they were income from the partnership, from the properties in the partnership. That was cash and marketable securities that were held in the trust corpus. For whatever reason. For whatever reason, because someone placed it there. Was there any component of cash? The liquid assets — No, let me just finish. In the trust on the date of death of mother? Well, the liquid assets are stated to include cash and marketable securities. So that's covered by the $835,000? As best we understand, yes. All right. And it's your opponent's contention that there should be a $6 million deduction made from the sum of those two numbers, the value of the real estate partnership and the cash securities on hand, from that sum, as opposed to any other? Because he represented to us that there's millions of other dollars on hand. But that's not — you're not agreeing with that? Here's how I believe that worked, although I agree that this isn't clearly established on the record. Because these were income-producing properties, and because the litigation spanned such a great length of time, income was produced. And that cash probably did grow. Your Honor suggested that the assets may have appreciated as well. But the liquidity available to satisfy a settlement in 2019 didn't have to correlate to the value of trust assets includable in the estate in 2006. The estate tax is due on the value of the date of death, not any appreciation in properties that then devolve pursuant to the testamentary devices and or the functions of the trust. So that if properties continue to earn money after that, that's not part of the estate for estate tax purposes? That is correct. That is correct. But this all depends on that factual question as to where the money came from, right? Because you wouldn't disagree that if, in fact, on the date of death, they had all the liquid assets already and they sat in a bank account and belonged to the trust, and then there was a claim on that for $6 million or whatever, it would have to be rededucted, no? The assets includable in the estate would be unchanged regardless of the balance in the income accounts of the trust, because the trust corpus, the trust assets, not its income, the goose, not the egg, consisted of a $54 million partnership and $835,000 in cash and marketable stocks. Property of which could not be used to pay the tax liability or, excuse me, not be used to pay the tax liability nor the liability generated by the failure to distribute $6 million to the income beneficiary of the Q-tip trust. It seems from here that the tax, the limited administrators are taking the position that the eventual liability, which was joint and several among multiple testamentary trusts and then secondarily guaranteed by them, was an encumbrance on the assets held in trust as of the date of death, and that's not the case. A fair market value purchaser would buy this partnership for its fair market value and not accede to that liability. A fair market value purchaser would pay $835,000 for cash and marketable securities worth that amount and not accede to any liability. Those are the values that are reportable and includable in the estate, the Supreme Court so held in Connolly. When your economic interest is unaffected by a liability, then the fair market value is added.  So that's what I was saying. So if, in fact, the package of assets that were in the trust on the date of death included liquid assets of over $6 million and then you knew if you bought those assets you'd have to turn over $6 million, wouldn't that reduce the value of them? I would posit that you don't know that, Your Honor, because the claim has not attached to trust to any of the property held in trust for the benefit of the decedent. But if the settlement agreement says we're going to pay the liability out of the assets held by the trust. Out of the assets held by three different trusts, which. But the other two trusts are the ones that accede to the property interests of the SK Trust, right? So it isn't really the same corpus we're talking about. So the settlement agreement says they're going to pay the liability out of the assets of the trust. Doesn't that mean there's an encumbrance of the assets of the trust? It does not because the assets of the trust that are assets, that are reportable assets as of the date of death, are not, are expressly accepted from the burden of that payment in the case of the partnership and are implicitly so accepted because they are, in the case of the cash and marketable securities, because as of the date of death, their market value is their market value. And if you purchased, if you purchased stock from someone who owed money to a creditor, you don't owe money to that creditor. You're instead providing funds to the person to satisfy the creditor. If Monette lived and settled with her children about this distribution and there had been an alteration of the trust documents such that the real properties could have been used to pay the $6 million, that then would be a liability of the trust, wouldn't it? Depending on how they're structured, it could have been. They could have arranged for this payment to become an encumbrance. Your point is, is that because the trust principles, principle, the properties can't be reached. That's right. That's right. You can't deduct from it because it's an asset that's not going to be held responsible for the obligation that the people who actually either participated in it or benefited by their lack of a distribution of income to Mama create, isolated it. That's correct. All right. But if the income from those assets are going to otherwise go into the trust and instead they have to go to pay the liability, why isn't that a reduction in what the trust is holding? Because the income doesn't go to the trust. The income during the mother's lifetime goes to her. It does not augment the trust corpus. And following her death, it goes to the remainder beneficiaries. So you're saying this is basically a liability of the remainder beneficiaries and not of the trust. Precisely. That's right. So even if we were valuing the trust, you would say that it shouldn't. You're saying you only look at the underlying assets. But, like, even if we were coming up with a market value of the trust itself, you're saying that the trust doesn't even have the liability because the way it's structured, you're saying it's a liability of the remainder beneficiaries, which shouldn't count. It certainly seems that way, although we don't have enough information to know for sure because the trust was supposed to terminate upon her death and may have continued. It's unclear where that income wound up. What we do know is, is that the asset that produces all the income was insulated from being held responsible for the failure to distribute the income to the income beneficiary during her lifetime. Correct. We know that. Is this what the tax court said? Right? So your opposing counsel said the tax court misunderstood the argument. And the tax court does seem to suggest, well, it's all just about the value of the partnership interest and doesn't address an argument about whether if the trust itself had a liability, it shouldn't count. I mean, did the tax court make the argument that you're presenting? It did. And because the tax court said what Your Honor has framed, which is that because the partnership was insulated from this liability and the parties agree on the fair market value, then that's the question that it needed to answer. The trust is not a party to this proceeding. It can obtain no relief in this proceeding. And if it's entitled to its own tax deduction on its own separate tax returns in 2019 for a disbursement it was obligated to make as a result of this settlement agreement, that is outside the scope of this tax court opinion. Well, why is it outside the scope? I mean, the limited administrators are appointed for a reason, which is that the S.K. Trust files its own tax return. So even though it's a tax return for the estate, there are going to be separate tax returns for the portion of the estate that's the S.K. Trust and the portion of the estate that's not, right? The estate tax return was filed. And it matters because the S.K. Trust has to pay its own tax liability. Okay. So those are two separate things. There's the Form 706 that the executor and the limited administrators each filed, there's two of them, in 2007, April of 2007. And those are in the record and you can see. The executor completed the estate tax return in every respect except for the assets of the S.K. Trust. And that included estate deductions for administration. The limited administrators filed a separate Form 706 involving only the reporting of the assets of the S.K. Trust. And they did not report, and this is important, they did not report the S.K. Trust as an asset. They did not accept the premise that is being advanced here, which is that the trust itself was property. Instead, they treated it as a Q-tip trust, which is a means of holding title to property of a deceased spouse for the benefit of its surviving spouse, and identified that property appropriately on the Form 706 as the partnership and the liquid assets that were currently in that trust. Now, in 2019, that's a separate tax return they would file. I believe it's a Form 1041, in which if the trust incurred a liability, then it would be doing the equivalent of its own balance sheet in terms of reportable assets or income and liabilities on its own separate tax return many years later. When the administration of the trust filed a tax return as part of the estate, they cannot reduce it by the liability, but when they file their own tax return, whether it's up to the same set of assets, they will be able to do that. Is that your position? Well, because it's a liability of the trust. It is not a liability of the estate. That's correct.  It's definitely not a liability of the estate. And it's not a liability of the partnership. Right. Okay. Okay. Thank you, Ms. Aveda.  We'll hear from Mr. Flynn on rebuttal. Yes, thank you. If it's a liability of the trust, Your Honors, then you have to reduce the value of the estate trust by that liability. Ms. Aveda said it's a liability. Wait a second. Wait a second. If the assets of the trust cannot be used to pay that liability, why would you deduct the liability from the assets of the trust, which are not reachable? Are you telling me that the properties can be sold to pay that $6 million? Two points to that. No, just answer my question. Okay. But I disagree with your premise. It was not that the KFLP could not be reached. It's that it was unnecessary. In other words – Well, answer my question. Can the properties in the limited partnership be sold to satisfy the obligation of the failure to pay the income to the wife during her lifetime? Absolutely 100 percent yes. It could have been sold. No question about that, Your Honor. That's my point. And I'm not – That doesn't show up in your brief anywhere. But that's in the settlement agreement, Your Honor. That question was never raised until, frankly, today. But the settlement agreement says – It's unnecessary because they're liquid assets. It's not saying – Excuse me. That's apparent in the tax court's decision to me. You know, I'm not an accountant, but I somehow managed to figure that out. I'm sorry. Could you – So you disagree with the assertion just made by your opponent? 100 percent disagree. That the properties are not – cannot be sold? They could have been sold. They could have been mortgaged. They could have been – Wait. Well, mortgage is a different thing. But once again, Your Honor, we're talking about date of death value. We're not talking about how do you raise the cash to pay the liability that existed on the date of death. When you look at an estate tax return, as everyone has said – But you're wrong. Pardon me? If you're wrong, if the properties couldn't be sold, do you lose? No, because it was a liability that existed on the date of death. Even though there's not a penny in – Let me give you a hypothetical. The trust has a dollar, and then it has property worth $50 million, but the $50 million cannot in any way be used to satisfy the failure to make the income distributions, the income beneficiary to pay off her estate for failure to make those distributions during a lifetime. Is that a liability of the trust? Yes, Your Honor. For estate tax purposes, it would still be a liability of the trust. Okay. This is an estate tax that is not a balance sheet. So can I ask this question? Yeah. So your opposing counsel said this is essentially a liability of the remainder beneficiaries, and it's not really a liability that comes out of the trust corpus. If that were true, if it were structured that way, would that mean you should not be able to deduct the value of the liability from the value of the trust? But, Your Honor, I disagree that it's a liability of the remainder beneficiary. It was – we're looking at a snapshot in the date of Mrs. Calico's death. What assets and liabilities did the trust have? The trust had assets that we talked about. It had the interest in the real estate, and it had $835,000 in cash. Well, Ms. Amedda just said, you know, if we're imagining a fair market transaction of the trust assets, the purchaser of it would not accede to the liability because we only look to the underlying assets that are being transferred. Is that correct? No, that's not correct. Why is that not correct? Because fair market value says you have to look at what a willing buyer and willing seller would agree to as a price, each knowing the – having reasonable knowledge of the fact. So if a willing buyer had bought the KFLP partnership interest, that person would not accede to the liability, right? Correct. And if the person had purchased whatever's in the bank account of the trust, that person would not accede to the liability. Correct. It's a liability. It's only if somebody actually purchased the trust itself as an asset that we're saying that person would accede to the liability. Right? Yes, Your Honor. So a lot hinges on that question as to whether the trust itself is the asset that we're saying is being transferred. Pardon me, Your Honor? So a lot hinges on this idea that whether it's the trust itself that's the asset that's being transferred. So I guess as a general matter, is a QTIP a vehicle for transferring ownership of the underlying assets, or is itself an asset that gets transferred? It's an asset that gets included in the trust. That's what the law is. Section 2044 of the Code requires that the trust, the SK trust, is included in the estate tax return, as part of the estate tax return. And, Your Honor, when you do – The QTIP itself or the assets that it includes? There's two different issues. There's two different valuations. The QTIP itself gets included. That's what the asset that gets included. That was the issue before the tax court. That's the issue that we're evaluating. It's a testamentary device. It's a testamentary device. It's a way of delaying the tax occurrence until the spouse's death. And so when the husband dies, the wife hangs up. You know, I have some familiarity with this. Yes. When the husband dies, the money flows into the QTIP trust. There's no tax on the estate at that point in time. The tax is deferred until mama gets to use the income for the rest of her life. And on her death, then the tax accrues. The trust is a testamentary device. It's not a corporate entity. It holds assets that were his, and she gets the benefit of their use. But it's a limited period. And then, ultimately, the property is then distributed to other people. It's a testamentary device over a period of time of the life of the surviving spouse. Precisely, Your Honor. But that's the point. You have to value that asset on the date of death.  May I just say one more thing? But the successor is not going to obtain the QTIP, but obtain the underlying assets, right? Right. No. Well, the executor will gather up the assets, but eventually those pour into the other two trusts. This is the term of the QTIP trust. Pour into the other two trusts, the Article IV and the Article V trust, which was for the children. But if I also may say, Your Honor, that we're missing the point also that Section 2053 is another issue that I argued in tax court. And 2053 allows the trust, not the estate, the trust itself, a deduction under 2053B of the Code. That's why I said that the estate tax return is not a balance sheet. You have assets and you have expenses, just like when we file our personal tax returns. And under 2053B, Your Honor, the trust, the trust, not the estate, the trust is entitled to a deduction for the $6.5 million. Well, the trust is part of the estate. I mean, you're filing a tax return on behalf of the estate. The trust is part of the estate, and the limited administrators, my clients, bear the estate tax with respect to that trust. But it's important to point out that on Schedule L, which I discuss in the brief, they were entitled to a deduction for the $6.5 million. And indeed, the IRS conceded in tax court and in the computations that preceded us coming to this Court that the SK Trust was entitled to deductions for paying out commissions under Section 2053, 2053B. It was entitled to deductions for legal fees under 2053B, and it was entitled to deductions for Federal and New York State interest on estate taxes under 2053B. To your point, Your Honor. So why isn't that right, that those are the administrative expenses, and the actual liability is not itself an administrative expense? It is, though, Your Honor. It's a liability of that trust. Because it's for closing it out and allowing it to be transferred, you're saying. Not necessarily. It's a liability because on the date of Mrs. Calico's death, it had accrued. That liability had accrued. It was for the three-year period before her death where that 60